GEORGE W. CHESLEY *v.* BENJAMIN F. BROCKWAY.

*Trespass on the Freehold.*

The plaintiff had taken a deed of the land, of which the defendant had notice, but had not entered into actual possession, and the grantor remained upon the land after the deed was given, by mere sufferance, and without any right or claim of right; *held,* that. under these circumstances, the plaintiff could maintain trespass *qu. cl. pf.*, for an entry by a third person upon the premises.

TRESPASS ON THE FREEHOLD for a quantity of manure. Plea the general issue, and trial by Jury, December Term, Caledonia County, 1861, POLAND, CH. J., presiding.

The plaintiff produced in evidence a deed from one Charles Varney of the premises, dated April 24, 1858, and recorded May 1, 1858. The manure in question was made on the premises while Varney was in possession of them, and was so situated as to pass by deed. The defendant's evidence tended to show that prior to the date of the deed from Varney to the plaintiff, he purchased the manure of Varney, and paid him for it, and that between the 24th of April and the 1st of May, 1858, he removed the manure from the premises, in which he was assisted to some extent by Varney. It also appeared that Varney remained in the house on the premises, with his family, for a few days after giving the deed to the plaintiff; but there was no evidence of any agreement or understanding that he might do so, or that he had or claimed any right to remain there, except by the mere sufferance of the plaintiff. The evidence for the plaintiff tended to prove that before the defendant removed the manure, he had notice of the sale and conveyance of the premises to the ~~defendant.~~ *plaintiff*

The court instructed the jury that if the plaintiff purchased and took a deed of the premises with no knowledge that the manure had been sold to the defendant, he would take a good title to it under his deed, though Varney had previously sold it to the defendant; and that, if, before the defendant moved the manure, he had knowledge that Varney had sold and conveyed the premises where the manure was situated, to the plaintiff, then he had no legal right to move it; but that if the defendant bought and paid for the manure before Varney conveyed the premises to the plaintiff, and moved it away before the plaintiff's

deed was recorded, and without knowledge of the sale and con-veyance to the plaintiff, then he might lawfully take it away ; and the jury were further instructed that if Varney remained in pos-session after the sale and conveyance by the mere sufferance of the plaintiff, and without any legal right or claim of right to retain possession as against the plaintiff, the plaintiff could nev-ertheless maintain the action of trespass for taking away the manure. The defendant excepted to the charge as given. The jury returned a verdict for the plaintiff.

*Peck & Colby*, for defendant.

—————————for plaintiff,

ALDIS, J. When Varney sold the manure to the defendant, he was the owner of it, and of the land. The defendant's right to take it was at that time unquestionable, but his right would not ripen into a perfect title until he actually took it. Until such taking and severance by the defendant, the manure remained a part of the realty.

While thus remaining Varney sold the land to the plaintiff, without giving him notice of the sale to defendant. Thus the title to the manure passed by the deed to the plaintiff. At this point both plaintiff and defendant were *bona fide* purchasers—each having the same right of ownership. He who first perfected such right would get the complete legal title. The defendant could do it if he got the manure into his possession before the plaintiff's deed was recorded or he had actual notice of the deed. The plaintiff could do it if he recorded his deed, or if the defend-ant had actual and legal notice thereof, before taking possession of the manure. The jury must have found that the defendant had notice of plaintiff's deed before he removed the manure—and as such notice would perfect plaintiff's and defeat defendant's title—the act of removing by the defendant was wrongful. It has been claimed in argument that the notice to defendant of the deed was not sufficient. But upon this point the charge was not objected to by defendant—nor any request made for any special charge on the point. Nor does it appear from the case what the

evidence of notice was—or that it was not sufficient to affect the defendant with full knowledge of the deed. The only question therefore that is fairly before us is whether trespass *qu. cl. fr.* will lie.

The objection is that the plaintiff had not a sufficient possession of the premises on which the manure was situate at the time it was moved, to maintain trespass on the freehold. He had taken a deed of the land, but had not entered into actual posession, and the grantor, Varney, remained in the house on the premises with his family for a few days after the deed, but by mere sufferance and without any right or claim of right.

The strict rule of the common law that the ownership of land does not give the owner constructive possession, but that he must have actual possession to sustain trespass, has been modified in the American courts; and now the possession of land follows the title. The legal owner of land is presumed to be in posession of it, unless there is an adverse possession, or some claim by one in possession of a right by contract or operation of law to the exclusion of the owner.

This was held in *Robinson* v. *Douglass,* 2 Aik. 374, and has been the law ever since in this State.

It is claimed that the doctrine of *Ripley* v. *Yale* in the 16 Vt. is to the contrary; but there Yale was in possession, claiming in his own right as purchaser under a contract. Here Varney remained in posession of the house without any claim of right, by mere sufferance—liable to be turned out at any moment. Trespass *qu. cl. fr.* will lie against a *strict* tenant at will, or at suffererance, for an injury to the reversionary interest of the owner of the freehold; and if against the tenant, then against one claiming to act under the tenant. This was the ancient doctrine of the common law, and has been repeatedly recognized in modern decisions—although in some cases like *Campbell* v. *Arnold,* 1 Johns, 511, cited by defendant's counsel, may be found to maintain that case is the proper form of action.

See 1 Hill'd on Real Prop., 552; *Starr* v. *Jackson,* 11 Mass. 519; 15 Wend. 169; 11 Johns, 385; 21 Pick. 367; 19 Vt. 517, *Cutting* v. *Cox.*

So trespass has been held to lie against an outgoing tenant at

will who sells and moves the manure, and against the purchaser. 1 Hil'd on R. P. 277 ; 5 Greenleaf 222 ; 21 Pick. 367.

So where a tenant carries on a farm at the halves, the landlord has such a possession as enables him to bring trespass for an injury to his reversionary interest—as for cutting down trees. 19 Vt. 517.

Applying the reason of these decisions to the case at bar, it is clear that the plaintiff had such a possession as fully sustains the action for this injury. The injury was one affecting his interest in the land—in no wise affecting the rights of the temporary occupant. The occupant Varney remained in the house at the mere pleasure of the plaintiff, and only for a few days. He claimed no possession or right of possession in the land. His possession was of the most transient character—and for no purpose of cultivating or using the land. In such a case the title draws to it the possession for the purpose of redressing injuries to the estate of the real owner, as much as if the possession was really vacant.

Judgment affirmed.